UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **PROTECT OUR DEFENDERS,** *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | No. 3:17-cv-2073 (VLB) |
| | ) | |
| v. | ) | |
| | ) | |
| **DEPARTMENT OF DEFENSE,** *et al.* | ) | JANUARY 9, 2019 |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Protect Our Defenders and Connecticut Veterans Legal Center file this sur-reply with leave of this Court. (Doc. #46). First, even with their supplemental declarations, Defendants fail to demonstrate that they have conducted an adequate search for responsive records. Second, Defendants' justifications for withholding records under Exemption 6 remain unavailing. Last, Defendants' release of previously withheld records resolves most of the Exemption 5 disputes, but Plaintiffs respectfully request that the Court review the remaining documents *in camera*.

I. **The Department of Defense's search is inadequate.**

It is well-settled that Defendants bear the burden of demonstrating that they have conducted an adequate search for responsive records. Neither their original nor supplemental declarations satisfy this burden. In fact, the supplemental declaration reveal in greater detail the ways in which the

1

Department of Defense ("DoD") wrongfully curtailed its search, and raise new questions regarding DoD's selection of search terms.

   a.   **DoD's search was not reasonably calculated to uncover all relevant documents.**

The legal adequacy of a Freedom of Information Act ("FOIA") search depends on whether it was "reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1008, 1114 (D.C. Cir. 2007). To "prevail on summary judgment when the adequacy of an agency's search is at issue, the defending agency must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Vietnam Veterans of Am. Connecticut Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*, 8 F. Supp. 3d 188, 205 (D. Conn. 2014). Defendants' declarations still do not satisfy this standard. Because DoD has failed to demonstrate beyond material doubt the reasonableness of limiting their search for records regarding the Air Force working group's *performance*, summary judgment is improper. *See, e.g., The Few, the Proud, the Forgotten et al. v. Dep't of Veterans Affairs*, 254 F.Supp.3d 341, 356-357 (D. Conn. 2017) (denying summary judgment because an agency limited its search to a regional office when responsive records may have also been located at headquarters).

Defendants' searches were not reasonably calculated to uncover records, as the Air Force did not require all personnel involved in the

working group to search for records related to its performance. Plaintiffs requested, "*any and all records* regarding the creation and performance of the Air Force's diversity team," (emphasis added), which includes records from any individual who participated in the working group across the three involved organizations: Diversity and Inclusion, Air Force Manpower, Personnel and Services ("HAF/A1D1"); Secretary of the Air Force for Manpower and Reserve Affairs ("SAF/MR"); and the Office of the Judge Advocate General ("AF/JA"). *See* Defs.' Mtn. Summ. J., Ex. 7, ECF No. 37-10, S. Jones Suppl. Decl. 3 ¶ 5.

In conducting its search, however, the Air Force relied on a HAF/A1D1 employee who "was involved in the formation of the working group and was aware of the type of work it performed" to locate records related to the performance of the working group. Defs.' Reply Supp. Mtn. Summ. J., Ex. 21, ECF No. 48-10, S. Jones. Suppl. Decl. 5 ¶ 7. That member searched only the shared network drive of HAF/A1DV, even though HAF/A1DV was just one of the multiple component offices involved in the working group. Members of other component offices were directed to search for records regarding only the creation of the working group, *Id.* at ¶¶ 7, 9, not its performance. Although Defendants' search generated some records related to the performance of the working group, it was not reasonably calculated to generate *all records* pertaining to its performance.

3

Defendants' search is particularly unreasonable in light of the decentralized nature of the Air Force's record management system. As Col. Jones's declarations explain: "Air Force organizations at all levels manage their own records and each have their own records managers." S. Jones. Supp. Decl. 2 ¶ 3. Individual members may store records on their organizational share drive, H drive, individual computer hard drive, or email accounts. Id. at ¶¶ 3, 4. Because these records are managed in a decentralized manner, Defendants' assertion that the share drives of other component offices involved in the working group, and personal drives and email accounts of other members of the group, do not contain non-duplicative records is conclusory. Defs.' Reply Supp. Mtn. Summ. J. 3.

The decentralized nature of the records system suggests that only personnel from those other component offices would be in a position to know what records they did or did not maintain. That one component office was responsible for the written product of the working group does not mean that no other component office, or member, maintained records as well.  The reasonable inference to be drawn (and to which Plaintiffs are entitled on this motion) from the dearth of non-statistical records located by Defendants, for instance, is that their search was inadequate, given the working group's charge to "brainstorm and identify different factors that could be contributing to underlining issues with the Air Force military justice system." S. Jones. Suppl. Decl. 4 ¶ 5.

4

### b. DoD did not adequately describe its method of search.

The second supplemental declaration from Col. Jones further undermines Defendants' claim that DoD performed a reasonable search. Defendants argue that it was proper to decline to use search terms such as "diversity," "diversity team," and "inclusion," because these terms would have encompassed records far beyond the scope of Plaintiff's request. S. Jones. Supp. Decl. 6-7 ¶ 10. However, Defendant's initial search using the terms "race" and "justice" returned only eleven pages of responsive records. Defs.' Mtn. Summ. J., ECF No. 37-8, Ex. 5, S. Jones Decl. at 3 ¶ 6. The terms "race" and "justice" are as broad or broader than, for example, "diversity team," and yet the former terms did not yield a response so large and overbroad as to be burdensome. It was, indeed, precisely the limited scope of this initial search that led Plaintiffs to request a supplemental search using additional terms. Although DoD has now provided further information, "an agency's declaration about a search must reasonably explain why it selected certain terms and rejected obvious alternatives." *The Few, the Proud, the Forgotten*, 254 F.Supp.3d at 356. DoD's supplemental declarations do not satisfy this standard.

Defendants also contend that the Air Force did not need search terms to conduct a supplemental search reasonably calculated to uncover the records sought because the member knew where, on the one share drive searched, relevant records would be found. S. Jones. Supp. 5 Decl. ¶ 7.

This contention undermines the adequacy of DoD's description of its search. Upon consulting this additional office member, who was involved in the working group, the Air Force quickly uncovered a significant number of responsive records. This demonstrates that a reasonable search would include generally searching the records systems managed by personnel who were involved in the working group. That the DoD has assumed such searches would only produce duplicative records establishes that Defendants have failed to demonstrate the reasonableness of their search.

## II. The Department of Defense's Exemption 6 redactions and withholdings are improper.

As Plaintiffs explained in their response, FOIA Exemption 6 does not permit DoD to withhold SJA biographies, the names of members of the Air Force's working group, or the names of personnel at the rank of Colonel (O-6) or below. Opp. at 34-46.

### a. Defendants may not withhold SJA biographies.

Defendants have not carried their burden of showing that disclosing Staff Judge Advocates' (SJAs') professional biographies constitutes a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). As such, the "balance" tips "in favor of disclosure." *Getman v. NLRB*, 450 F.2d 670, 674 n.11 (D.C. Cir. 1971). As Plaintiffs have shown, SJAs' identities are public, and they write their professional biographies expecting that the biographies will be widely distributed. Opp. 37-39. Defendants incorrectly

suggest, without citation, that *Perlman* is not satisfied because Plaintiffs accuse no individual SJA of wrongdoing. Reply 17-18. However, not only are "the [*Perlman*] factors . . . not all inclusive," but "no one factor is dispositive." 312 F.3d 100, 107 (2d Cir. 2002). The balance of the *Perlman* factors tilt firmly in Plaintiffs' favor.

In fact, the factor most closely tied to the central purpose of FOIA — "whether the information sought sheds light on a government activity" — weighs heavily in Plaintiffs' favor. As described, SJAs control prosecutorial decisionmaking. Their role is contested, and of significant public interest.[1]

Plaintiffs have requested SJAs' professional biographies to help the public determine whether, as claimed, SJAs are qualified to make these critical decisions. SJA bios list qualifications like education, training, and litigation experience. Opp. 41-42. The biographies speak for themselves – if "derivative use" included simply reading the records produced, as Defendants would have it, the doctrine renders FOIA meaningless. Reply 19.  Moreover, the requestors in *Long*, a "derivative use" case, stated that their FOIA request for immigration judge names was a first step – they

---

[1] Defendants object that certain records Plaintiffs cite are inadmissible hearsay. Reply n.3. Not so. POD's report on racial bias in military discipline and the USA Today article describing it are offered to show that there is a significant public *interest* in the racial bias that POD alleges, not for the "truth of the matter asserted." Fed. R. Evid. 801. Releasing the records would advance "public understanding of the operations or activities of the government" about this allegation, whether ultimately true or not. *U.S. DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 775 (1989).

would need to conduct interviews with the judges to glean information not already public. 692 F.3d 185, 194 (2d Cir. 2012). By contrast, simply reading SJAs' biographies would reveal a great deal about the reliability of the military's prosecutorial decisionmaking. Plaintiffs have offered to accept the biographies of SJAs who rank below the O-6 level with their identities and any purely personal information redacted if Defendants are concerned about harassment. Opp. 39. Their offer stands.

> b. Defendants must release the names of officers at the O-6 level, their civilian equivalents, and members of the working group.

Individual government employees' names may be disclosed if the public interest in their release outweighs the individuals' privacy interest in remaining unnamed. Opp. 43-46. Defendants incorrectly construe *VVA Chapter 120* as holding that O-6s are low-ranking employees whose names should not be released, Reply 13, but the *VVA* court denied release of *all* government employees' names in that case because it found that the public interest was "negligible or nonexistent." 8 F. Supp. 3d at 188. In so doing, it quoted a court in the Second Circuit as finding only that "'DoD personnel *below* the office-director level, or officers *below* the rank of Colonel [O-6]' had a legitimate privacy interest in not having their names and email addresses disclosed." *Id.* (citing *Amnesty Int'l USA v. C.I.A.*, 728 F. Supp. 2d 479, 523-25 (S.D.N.Y. 2010) (emphasis added)).

**By contrast, producing the names of the O-6s and their civilian equivalents, as well as members of the diversity working group, will let the public track who makes decisions not to pursue initiatives designed to reduce bias in military discipline and to implement the Military Whistleblower Protection Act. Opp. 1-7. This release would shed light on how the agency is performing its statutory duties, a central FOIA mission. *See Dep't of Defense v. FLRA*, 510 U.S. 487, 497 (1994).**

**In their reply, Defendants ask why O-5s' names should be protected if Plaintiffs argue that O-6s' names should not be, Reply 14, but it is Defendants' burden, not Plaintiffs', to articulate why the names of O-6s may not be released. *Wood v. F.B.I.*, 432 F.3d 78, 83 (2d Cir. 2005). Military rank is statutorily designed to confer exponentially greater supervisory responsibility with each promotion. *See* 10 U.S.C § 523 "Authorized strengths" (showing, for example, that if the Army has 1,613 O-6s, it may have at most 5,253 O-5s, and 7,768 O-4s). Officers at the O-6 level hold significant public positions that may be highly visible; Protect Our Defenders' President was Chief Prosecutor of the Air Force as an O-6. Opp. Ex. 1 ¶¶ 1-3. High rank carries correspondingly higher public responsibility; this court should order the release the names of O-6 level officers and their civilian equivalents accordingly. Opp. 45-46.**

9

### III. Plaintiffs Request *In Camera* Review of Exemption 5 Withholdings

With respect to Exhibits 9-E, 9-G, 9-H, and 9-I2, FOIA requires that an agency disclose any "reasonably segregable portion of a record," 5 U.S.C. § 552(b), and explain the process by which it has reviewed withheld material for segregable portions. *Rugiero v. Dep't of Justice*, 257 F.3d 534, 553 (6th Cir. 2001) ("[A]n agency must supply a relatively detailed justification and explain why materials withheld are not segregable"). If this Court is not inclined to order the release of these records wholesale, Plaintiffs respectfully request that the Court examine Exhibits 9-E, 9-G, 9-H, and 9-I2 *in camera* to determine the propriety of Defendants' withholdings in order to ensure that Defendants have accurately disclosed the segregable portions of records.

Dated: January 9, 2019
New Haven, CT

By: /s/ Michael J. Wishnie
Meghan Brooks, Law Student Intern
Alyssa Peterson, Law Student Intern
Kathryn Pogin, Law Student Intern
Renee Burbank, *application for D. Conn. admission pending*
Michael J. Wishnie, Attorney, ct27221
Veterans Legal Services Clinic
Jerome N. Frank Leg. Servs. Org.
Yale Law School*
P.O. Box 209090
New Haven, CT 06520-9090
Telephone: (203) 432-4800
Fax: (203) 432-1426
Email: michael.wishnie@ylsclinics.org

---

*This brief does not purport to represent the views of Yale Law School, if any.