UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PROTECT OUR DEFENDERS, et al., | : | |
|     *Plaintiffs*, | : | No. 3:17-cv-2073 (VLB) |
| | : | |
| v. | : | |
| | : | |
| DEPARTMENT OF DEFENSE, et al. | : | July 19, 2019 |
|     *Defendants*. | : | |

MEMORANDUM IN SUPPORT OF DEFENDANTS'
<u>MOTION FOR RECONSIDERATION</u>

Defendants, the Department of Defense ("DOD") and Department of Homeland Security ("DHS"), respectfully submit this memorandum of law, pursuant to Fed. R. Civ. P. 60(b) and D. Conn. L. Civ. R. 7(c), in support of their motion for reconsideration and for summary judgment. Defendants request that the Court reconsider its Memorandum of Decision Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (doc. #37, July 12, 2019) ("Order") on the two issues discussed below.

I.    <u>Standard</u>

"In the Second Circuit and pursuant to Local Rule 7(c), a motion for reconsideration shall be accompanied by a memorandum setting forth concisely the matters or controlling decision which counsel believes the Court overlooked in the initial decision or order." *Zalaski v. City of Hartford*, No. 3:08-cv-601 (VLB), 2011 WL 5903454, at *1 (D. Conn. Nov. 23, 2011). In the Second Circuit, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might

ORAL ARGUMENT
IS REQUESTED

reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *Wiremold Co. v. Thomas & Betts Corp.*, No. 3:16-cv-2133 (VLB), 2019 WL 3051295, at *1 (D. Conn. July 12, 2019) (citing *Shrader*).

II.  **Exemption 6 redactions of employee and Working Group member names and contact information.**

With regard to defendants' Exemption 6 claims over the employee and Working Group member names and contact information, respectfully, the Court's ruling did not consider the following controlling decisions and data:

    A.    Caselaw analyzing 5 U.S.C. § 552(a)(2)(E).  The Court's Order cited this FOIA subsection but neither party briefed it;

    B.    The fact that plaintiffs' opposition to summary judgment waived any challenge to the records as "similar files" by not contesting that element of defendants' Exemption 6 claims;

    C.    Because defendants were not on notice that this issue was contested, defendants did not have the opportunity to thoroughly explore favorable portions of cited caselaw, which the Court discussed in its ruling.  Specifically, *Vietnam Veterans of Am. Conn. Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*, 8 F. Supp. 3d 188 (D. Conn. 2014) ("*VVA Chapter 120*") is indistinguishable from the present case because it addresses Exemption 6 redactions of employee names across *all* produced documents (not just separation packets);

      D.      Other law, which defendants would have relied upon to address this element of Exemption 6, had it been challenged by plaintiffs.

For these reasons, described in detail below, defendants respectfully request that the Court reconsider its order on this issue and render judgment for the defendants as requested.

      A.      **The Court's Order did not cite caselaw analyzing Section § 552(a)(2)(E).**

The Court's opinion demonstrates that it is concerned about DOD employees' privacy interests because it suggests that defendants utilize a different section of FOIA, 5 U.S.C. § 552(a)(2)(E), rather than Exemption 6, 5 U.S.C. § 552(b)(6), to withhold the employees' names and contact information.  Order at 37-38, 43.  The parties did not brief § 552(a)(2)(E); it was raised for the first time in the Court's Order.  Regrettably, defendants cannot avail themselves of § 552(a)(2)(E) because the requested records were not covered by (nor affirmatively disclosed under) § 552(a)(2).

FOIA subsection (a) requires agencies to make available to the public three types of information.  First, § 552(a)(1) requires federal agencies to publish enumerated types of information, not at issue here, in the Federal Register.  Second, § 552(a)(2) requires agencies to affirmatively, electronically publish other types of records, also not at issue here.  Third, § 552(a)(3) governs our case and requires the disclosure of records (within limits) upon request by any person.  FOIA subsection (b) creates complete exemptions from § 552, such that FOIA does not at all apply.  § 552(b) ("This section does not apply to" nine categories of information, (1)-(9)).  Defendants' withholdings were made pursuant to one of

3

subsection (b)'s subsections, meaning defendants argue the withheld information is completely exempt from FOIA.

Undersigned counsel was able to identify relatively few published cases that analyze § 552(a)(2)(E), and only two cases (discussed below) that also analyze § 552(b)(6).  Indeed, counsel cannot find any published caselaw affirming a federal agency redacting names under § 552(a)(2)(E) in documents produced in response to a FOIA request under § 552(a)(3).  Simply, there is no precedent for the Court's invitation for defendants to invoke § 552(a)(2)(E) here.

In *Doe v. U.S. Dept. of Labor*, a case alleging violations of the Privacy Act, 5 U.S.C. § 552a, the United States District Court for the District of Columbia discussed both subsections.  Plaintiff alleged harm from the agency's publication of decisions (of the Employee Compensation Appeals Board) that contained private medical information.  *Doe* described that FOIA § 552(a)(2)(E) "permits, but does not compel, federal agencies disclosing such records [pursuant to § 552(a)(2)] to redact confidential information pertaining to individuals."  *Id.*  The Court further stated:

> The FOIA's disclosure requirement does not apply, however, to "personnel and medical files *and similar files* the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (emphasis added).  Consequently, if an agency's decision is sufficiently similar to a personnel and medical file and if the disclosure of that decision "would constitute a clearly unwarranted invasion of privacy," 5 U.S.C. § 552(b)(6), it need not be released under the FOIA and thus is not protected by § 552a(b)(2).  Therefore, unless one of the other exceptions of the Privacy Act applies, 5 U.S.C. § 552a(b)(1)-(12), the disclosure of a decision of this nature constitutes a violation of the Privacy Act, 5 U.S.C. § 552a(b).

*Doe v. U.S. Dept. of Labor*, 451 F. Supp. 2d 156, 167 (D.D.C. 2006), *vacated pursuant to settlement*, No. CIV. A. 05-2449 (RBW), 2007 WL 1321116 (Mar. 22, 2007).  The *Doe* analysis makes clear that the distinction between § 552(a)(2)(E) and § 552(b)(6) is important because the structure of FOIA has implications for other law including the Privacy Act: documents that are <u>entirely exempt</u> from FOIA, due to § 552(b), are likewise prohibited from being disclosed by the Privacy Act, § 552a(b).  Documents that are <u>subject to FOIA</u>, pursuant to § 552(a)(2) (and its non-compulsory redaction provisions in subsection (E)), are not necessarily protected by the Privacy Act.

As described above, subsection (a)(2)(E) is only available for records disclosed under subsection (a)(2).  The records at issue here are not covered by (a)(2); they were disclosed only under (a)(3).  The distinction is apparent in the other case that addressed both subsections (a)(2)(E) and (b)(6), *Nat'l Prison Project of ACLU v. Sigler*, 390 F. Supp. 789 (D.D.C. 1975).  *Sigler* held that, contrary to the government's assertion, Board of Parole orders were subject to FOIA (a)(2) and must be proactively disclosed.  *Id.* at 792-94.  The Court noted that identifying details may be deleted pursuant to (a)(2).  *Id.* at 794.  The records were not disclosed in reaction to a FOIA (a)(3) request, and did not qualify for FOIA (b)(6) for other reasons.  *Id.*

Here, the Court followed its reference to § 552(a)(2)(E) with a cite to *United States Dept. of State v. Ray*, 502 U.S. 164, 174 & n.9 (1991). Order 33-34.  *Ray* in turn quotes *DOJ v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 755 n.7 (1989) ("*Reporters Comm.*").  Neither *Ray* nor *Reporters Comm.* holds that an

agency may respond to a FOIA request under § 552(a)(3) by redacting information as provided in § 552(a)(2)(E).  Rather, both cases' footnotes and text merely acknowledge that FOIA has multiple provisions for redacting names in furtherance of protecting privacy interests.[1]

Accordingly, the defendants do not believe that § 552(a)(2)(E) is applicable or available to them to protect the privacy interests of DOD employees in this case.  In focusing on § 552(a)(2)(E) as a possible basis for redacting the personal information of DOD employees, such as names and contact information, the defendants believe the exemption provided for by Congress in § 552(b)(6) was discounted.  Since § 552(a)(2)(E) is not available, defendants request that the Court reconsider its ruling.

B.     Any argument that the records were not "similar files" was waived.

Defendants' opening brief asserted that the records at issue are "similar files."  Mem. in Supp. of Defs.' Mot. for Summ. J. (doc. # 37-1) at 21-22.  Plaintiffs waived any challenge to the threshold inquiry whether the records at issue were "similar files" under Exemption 6 by not raising the issue in their opposition to summary judgment.  Plaintiffs' opposition to defendants' motion challenged only the second step (the balancing test) of the Exemption 6 inquiry.  Pls.' Mem. in Opp. to Defs.' Mot. for Summ. J. (doc. #40) at 34-36 (addressing only balancing

---

[1] *Reporters Comm.* explicitly notes: "These provisions, for deletion of identifying references and disclosure of segregable portions of records with exempt information deleted, reflect a congressional understanding that disclosure of records containing personal details about private citizens can infringe significant privacy interests."  *Reporters Comm.*, 489 U.S. at 766 (1989).

test), 43-46 (addressing only balancing test); Pls.' Sur-Reply in Opp. to Defs.' Mot. for Summ. J. (doc. #50) at 8-9 (addressing only balancing test).

Because plaintiffs waived any challenge to Exemption 6 Step 1 (whether the records at issue are "similar files"), defendants did not address this issue in reply to plaintiffs' opposition. As such, the Court did not have the full position of the defendants with respect to this issue before issuing a ruling. Thus, defendants request that the Court reconsider its Order denying summary judgment with respect to DOD employee names, including those who participated in the Working Group.

### C. Defendants did not have the opportunity to thoroughly explore favorable portions of cited caselaw.

Defendants acknowledge that the Court must satisfy itself that Exemption 6's requirements are met, and that it can, *sua sponte*, raise the "similar files" issue. However, doing so deprives the defendants of the opportunity to respond to a critique of this element of their claim. As it stands, the only case law cited to the Court in any discussion of the "similar files" element of Exemption 6 is the supportive law cited by defendants in their opening brief. Mem. in Supp. of Defs.' Mot. for Summ. J. (doc. # 37-1) at 21-22. Had plaintiffs challenged Exemption 6 Step 1 at any point, defendants would have replied to address critiques of the caselaw now discussed in this section, and would have additionally cited the caselaw discussed in Section D. These cases clearly support a reading of "similar files" that is sufficiently broad to protect defendants' redactions of DOD employee names.

The Court's Order cites the discussion of "separation packets" in *Vietnam Veterans of Am. Conn. Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*, 8 F. Supp. 3d 188 (D. Conn. 2014) ("*VVA Chapter 120*"), to distinguish it from this case, Order at 34 n.14 (citing *VVA Chapter 120,* 8 F. Supp. 3d at 230-231), but *VVA Chapter 120's* holding approving DOD's redaction of names under Exemption 6 was not limited to separation packets.

In fact, the Court in *VVA Chapter 120* approved DOD's Exemption 6 claim over every employee name that appeared in each of the 1300 pages which were produced. 8 F. Supp. 3d at 230 ("Invoking Exemption 6, the DoD redacted the names, other identifying information and contact information of low-level DoD officials in the documents that were released to the plaintiffs"), 231 ("Therefore, because the defendants properly invoked Exemption 6 in redacting individual DoD employees' names, other identifying information and contact information, the motion for summary judgment is being granted as to the propriety of the redactions."), 201 (describing 1300 pages produced, which included (but were not limited to) some separation packets). Low-level employee names were redacted from every responsive document. *VVA Chapter 120*, No. 3:10-cv-1972 (AWT), Aff. of Mark H. Herrington (doc. #37-20) ¶¶ 14 (citing Ex. 3, *Vaughn* index), 16.[2]

---

[2] ¶ 14 reads: "Second, also under b(6), DoD redacted certain employees' names and other personally identifying information in the responsive documents, as its release would also constitute a clearly unwarranted invasion of the personal privacy of these individuals."

¶ 16 reads: "Exemption 6 was also used to withhold DoD employees' names and other personally identifying information in the responsive documents, as its release would constitute a clearly unwarranted invasion of the personal privacy of these individuals. DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below.

8

Generally, the responsive documents that were produced included "statistical data, regulatory guidance, and documents addressing compliance with DOD standard regarding personality disorder discharges . . . ." *Id.* ¶ 25.[3]

The *VVA Chapter 120's Vaughn* index specifically stated that DOD claimed Exemption 6 redactions over "junior DoD personnel's names and contact info" in the following types of documents: emails, memos, and two <u>Talking Papers</u>, as well as disciplinary and medical records.  *Id.* Ex. 3 *Vaughn Index* at PDF pages 21, 25-26 of Doc. #37-20 (emphasis added).

The Court's holding in *VVA Chapter 120* was not limited to separation packets, but rather approved DOD's redaction of employee names in every responsive document, including emails, memos, and Talking Papers—just as DOD has claimed here.  The *VVA Chapter 120* Court's approval acknowledges the

---

This policy has been continuously deemed proper in numerous other FOIA litigations. These individuals have a legitimate privacy interest that would be threatened if this information was publicly disclosed and there is no public interest in having this information disclosed."

Mr. Herrington's declaration discussed DOD's Exemption 6 claims with respect to separation packets separately, at ¶ 15.

[3] The produced documents were highly varied because the *VVA Chapter 120* plaintiff's requests were not at all limited to separation packets.  The requests were for "all records related to the use by branches of the United States Armed Forces of personality disorder discharges and adjustment disorder discharges to separate members of the Armed Forces from service since October 1, 2001."  8 F. Supp. 3d at 200.  The plaintiffs specifically sought "correspondence, documents, data, videotapes, audio tapes, emails, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, order, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, or studies."  *VVA Chapter 120*, No. 3:10-cv-1972 (AWT), Am. Compl. Ex. A. Doc. #22 at 2 n.1.  Elaborating on specific items, the plaintiffs requested, *e.g.*, "reports, documents, memoranda, or the like," *id.* at 3, and "memoranda, manuals, guidance or other records," *id.*

9

reality that DOD employees have a substantial privacy interest in merely the fact of their "work status (as opposed to some more intimate detail)" because their "occupation alone could subject the employee to harassment or attack." *See Long v. OPM*, 692 F.3d 185, 192 (2d Cir. 2012).

> D. <u>Additional caselaw, which defendants would have cited if the "similar files" element had been challenged, supports defendants' position.</u>

Had defendants been on notice that whether the produced records constituted "similar files" was a contested element of their Exemption 6 claim, they would have cited the following caselaw to the Court.

As the D.C. Circuit Court of Appeals applied the relevant precedent, the Exemption 6 inquiry does not turn on "the nature of the files" in which the information is contained. *N.Y. Times v. NASA*, 920 F.2d 1002, 1006 (quoting *Dep't of State v. Wash. Post*, 456 U.S. 595, 599, 602 (1982)). Rather, the "threshold . . . is crossed if the information merely 'applies to a particular individual.'" *Id.* (quoting same). The D.C. Circuit Court of Appeals subsequently wrote, the threshold is "minimal." *Washington Post Co. v. HHS,* 690 F.2d 252, 260 (1982) ("This ensures that FOIA's protection of personal privacy is not affected by the happenstance of the type of agency record in which personal information is stored.").

The Court explained,

> There is, of course, a very good reason why the Exemption 6 threshold was set at a low level: information that fails to cross that threshold <u>must be released without regard to any invasion of personal privacy that may result, and without regard to whether there is a sufficient public interest in its release to warrant the harm caused by that invasion of privacy</u>. A threshold that excludes too much would undermine what the Supreme Court described as the Congress's objective of "provid[ing] a

10

> **proper balance between the protection of an individual's right of privacy and the preservation of the public's right to Government information." H.R. Rep. No. 1497, 89th Cong., 2d Sess. 11 (1966), U.S. Code Cong. & Admin. News 1966, 2418, 2428, quoted in** *Washington Post***, 456 U.S. at 599, 102 S.Ct. at 1960.**

*N.Y. Times v. NASA*, 920 F.2d at 1006 (emphasis added).

*NY Times v. NASA* has been cited favorably by courts in this Circuit to find that various types of government records satisfied the threshold inquiry. *See, e.g., Adelante Alabama Worker Ctr. v. U.S. Dep't of Homeland Sec.*, 376 F. Supp. 3d 345, 365 (S.D.N.Y. 2019) (holding that memoranda, expert reports, summaries, and documentation of complaints were all "similar files"); *Seife v. United States Dep't of State*, 298 F. Supp. 3d 592, 623 (S.D.N.Y. 2018) (holding that emails, proposed talking points, draft opening statements, and draft rollout schedules were all "similar files"); *Da Costa v. U.S. Gov't*, No. 10 CIV. 169 (PAC) (FM), 2011 WL 846701, at *4, 9 (S.D.N.Y. Feb. 22, 2011) (properly redacted National Labor Relations Board documents included "letters" and "fax cover sheets"); *Associated Press v. U.S. Dept. of Justice*, No. 06 CIV. 1758 (LAP), 2007 WL 737476, at *4 (S.D.N.Y. Mar. 7, 2007), *aff'd*, 549 F.3d 62 (2d Cir. 2008) (finding a petition for commutation of sentence was a "similar file"). The Supreme Court cited favorably to the eventual holding in *NY Times*, after remand. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 170-71 (2004) (approving withholding of record at issue in *NY Times v. NASA*, on remand).

Coupled with this precedent, *Long and VVA Chapter 120* implicitly acknowledge that, in this Circuit, in the case of employee names, the mere existence of the name in a government record necessarily means the record

11

"applies to a particular individual" because the record discloses the individual's work status.  See *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982); *Long*, 692 F.3d at 192 (holding that DOD employees' "work status (as opposed to some more intimate detail)" was protected).  Therefore, the threshold inquiry is satisfied here.

The proper inquiry for the Court—as acknowledged by both parties briefing Exemption 6 Step 2—is the balancing test:  whether the public's interest in knowing what the government is "up to" implicates the actual names of these low-level employees, and whether that interest outweighs the employees' interests in maintaining privacy in light of their sensitive occupation.

Accordingly, because Exemption 6 Step 1 was not challenged in the briefing on the motion for summary judgment, and therefore relevant caselaw discussing Exemption 6's "threshold inquiry" was not discussed, defendants request that the Court reconsider its motion and render judgment in DOD's favor to protect from disclosure DOD employee names, including those who participated in the Working Group, in all produced records.

III.   **Exemption 5 claim that the Talking Paper's Recommendations section is deliberative**.

With regard to defendants' Exemption 5 claim over the Talking Paper, Exhibit 9-I2 (doc. #48-9), the Court's ruling stated that the Court was "not convinced" that the "Recommendations" section "is deliberative."  Order at 25-26.  Regrettably, the declarations submitted to Court in support of this argument were not a model of clarity, and the Court has never availed itself of the opportunity to review the unredacted Talking Paper.  Due to these oversights, the

Court's ruling misconstrues both the process that lead to the Talking Paper's Recommendations, and their content.  The Court's ruling did not consider the following controlling data, which relates to both process and content.

### A. The Talking Paper Recommendations were "provided to" the Office of the Secretary of Defense, but not "officially briefed to" senior officials.

In the military context, ordinary words often have different meanings than in civilian life.  Here, the Court's finding that "Defendants represent that the Talking paper was never presented to senior Air Force officials," Order at 25, is out of context.  The Court's finding seems to rely on admittedly-confusing verbiage contained in earlier declarations.  Defendants' argument below, and the new declaration, seek to clarify the factual narrative regarding the process involving the Talking Paper Recommendations.

Defendants' motion for summary judgment cited Colonel Jones's declaration for the statement that "the recommendations, conclusions, and findings of the working group have not been officially briefed to senior officials within the Air Force or to the Office of the Secretary of Defense, which develops policy for the entire Department of Defense."  Mem. in Supp. of Defs.' Mot. for Summ. J. (doc. # 37-1) at 39.  It appears that the Court deduced its conclusion that the Talking Paper was "never presented" from this statement, which held a different meaning to defendants.

In fact, the new declaration clarifies that the recommendations indeed "were provided to the Office of the Secretary of Defense ('OSD') for consideration of whether there should be changes in these policies or practices . . . ."  Ex. 23, R. Sono Decl. ¶ 7 (July 18, 2019) (emphasis added).  "OSD has control and command

13

of the entire Department of Defense and sets policies and procedures regarding the Services' military justice systems, which are then implemented by the individual Services." *Id.*

Being "officially briefed" is a term of art and refers to a formal process at DOD.  The fact that the Talking Paper not "officially briefed," does not mean that decision makers were not aware of it and its Recommendations section, nor that the process of the working group was "an exercise which went nowhere."  Order at 26.  "Providing" the Recommendations to the Office of the Secretary of Defense allowed its staff to consider whether, at some time, to "officially brief" the Recommendations.[4]

### B.  The deliberative nature of the Talking Paper Recommendation section is evidenced by the process the Talking Paper describes.

Further, the process that led to the formation of the working group and its drafting of the Talking Paper Recommendations indicates the deliberate nature of the working group and record.  The Talking Paper identified plaintiff Protect our Defenders as "an advocacy group 'dedicated to addressing the epidemic of rape and sexual assault in the military' and an 'impartially administered system of

---

[4] Additionally, interviews by agency counsel of new witnesses suggests that it is possible the Talking Paper was officially briefed at some point.  Accordingly, Ms. Sono's declaration states, "it is difficult to determine whether OSD was officially briefed due to the passage of time and changes in personnel."  Ex. 23, R. Sono Decl. ¶ 7.  Colonel Jones's declaration, Ex. 5, S. Jones Decl. 4-5 ¶¶ 19 (doc. #37-8), is not misleading because he had assumed his position in July 2017, and some of his statements were made based on "information conveyed to me by other HAF/A1V [(Headquarters Air Force Diversity and Inclusion, Manpower, Personnel, and Services)] members."  *Id.* ¶ 2.  Colonel Jones is now in the process of retiring and is unavailable.  Defendant is <u>not</u> now taking the position now that the Talking Paper <u>indeed was</u> officially briefed; it is merely informing the Court of a previously-unknown ambiguity about whether it was officially briefed.

14

justice'". Ex. 9-I2 at 1 (doc. #48-9 PDF page 2 of 12). The Talking Paper describes that the working group was created in response to plaintiffs' March 7, 2016 FOIA request (not at issue here).[5]  *Id.*

Ms. Sono's new declaration elaborates on information contained in the Talking Paper. Ms. Sono's declaration elaborates that plaintiff's request (consistent with its nature as an "advocacy group" dedicated to challenging the military's response to an issue) had made allegations that the military justice system was biased, and that the working group was created to address those allegations. Ex. 23, R. Sono Decl. ¶ 5. Accordingly, its "character and purpose," and work, were inherently deliberative. *See id.* "The 90-day working group was created in order to study demographic trends within the Air Force military justice system and provide recommendations about policy changes, process modifications, or areas for additional study." *Id.* "At the conclusion of the study, the Study Director from Headquarters Air Force Diversity and Inclusion, Manpower, Personnel, and Services ('HAF/A1DV') prepared a written report detailing the group's works, findings, and recommendations. This report is the Talking Paper." *Id.*

---

[5] The Talking Paper states: "The data complied by USAF in response to the PoD FOIA show persistently higher court martial and non-judicial punishment (Article 15) rates per thousand for Blacks than Whites or Others. Upon review of these top-level rates, SAF/MR and AF/A1 asked AF/JA to partner on a deeper dive study to uncover and resolve any underlying issues."

The facts recited from the Talking Paper were available to the Court, but it does not appear the Court considered them in ruling that the Talking Paper's Recommendations were not deliberative.

### C. Ms. Sono's new declaration provides new evidence describing the content of the redacted Recommendations.

In the event the Court requires additional information, a supplemental declaration from Rita Sono is attached, which described in detail the redacted portions and why they are deliberative. This new evidence will inform the Court's analysis whether the Recommendations section was deliberative and weighs in favor of the Court granting reconsideration.

"The recommendation section includes detailed discussion about training changes for military justice personnel as well as all Air Force personnel in order to dispel disparities in the Air Force's military justice system. The section also contains recommendations about what steps the Air Force should take in order to continue its review of the Air Force military justice system." Ex. 23, R. Sono Decl. ¶ 6.

### D. Ms. Sono's new declaration provides new evidence describing the purpose of working group as it relates to military policy.

Ms. Sono also explains that the Recommendations section's deliberative nature is clear "because they were generated because of the working group 90-day consultative process, and the group's efforts is part of the Air Force['s] continued, on-going process of evaluating its military justice system procedures and policies." Ex. 23, R. Sono Decl. ¶ 7. "The working group and their recommendations served as another avenue for reviewing" military justice system policies. *Id.* "If implemented, the recommendations could have significant consequences on how the Air Force administers its military justice system and whether the Air Force military justice process is fair and impartial." *Id.* "Not only could new training affect whether and how personnel prosecute

16

certain cases, but the recommendations could potential impact future military justice policies as a whole." *Id.* "Consequently, releasing this information in any form would undermine the exact policy considerations underlining the deliberative process privilege. It could cause public confusion about whether the working group's recommendation had any impact on any military justice changes that took place after the group completed its study." *Id.*

### E. The Court has not conducted an *in camera* review of the redacted Recommendations, and is invited to do so.

Finally, the Court has not yet conduct an *in camera* review of the document, which defendants invite the Court to undertake if a review of the Talking Paper, and the newly-filed declaration, is not sufficient. FOIA explicitly authorizes *in camera* review. § 552(a)(4)(B). If requested by the Court, defendants will promptly file the unredacted Talking Paper under seal.

## IV. Conclusion

Defendants respectfully request that the Court reconsider its ruling in order to address the following overlooked caselaw and facts.

- **Regarding whether the names of employees and Working Group members were contained in "similar files," as interpreted under FOIA precedent:**

    A.  Caselaw analyzing 5 U.S.C. § 552(a)(2)(E), which was raised for the first time in the Court's Order and was not briefed by either party;
    B.  Plaintiffs' waiver of any challenge to the records as "similar files";
    C.  Caselaw in the district which is indistinguishable from the present case and upholds the exact claims made here;
    D.  Other law, which defendants would have raised if the "similar files" element had been challenged.

- **Regarding whether the Talking Paper Recommendations are deliberative:**

    A.  The new fact that the Talking Paper was "provided to" senior level decisions makers, even though it may not have been "officially briefed to" them;
    B.  The overlooked fact that the Talking Paper itself describes its deliberative nature;
    C.  New evidence describing the content of the redacted Recommendations;
    D.  New evidence describing the purpose of the working group, as it relates to military policy;
    E.  The fact that the Court has not conducted an *in camera* review of the redacted Recommendations.

Accordingly, on the basis of these overlooked law and facts, the defendants request that the Court grant their motion for reconsideration and grant summary judgment for the defendants on these issues.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

  /s/ *Natalie N. Elicker*
Natalie N. Elicker, ct28458
Assistant United States Attorney
157 Church Street
New Haven, CT 06510
Telephone: (203) 821-3700
Fax: (203) 773-5373
Email: Natalie.Elicker@usdoj.gov
