UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PROTECT OUR DEFENDERS and CONNECTICUT VETERANS LEGAL CENTER<br>    Plaintiffs<br><br>   v.<br><br>DEPARTMENT OF DEFENSE and DEPARTMENT OF HOMELAND SECURITY<br>    Defendants. | : 3:17-cv-02073 (VLB)<br>:<br>:<br>:<br>:<br>: February 28, 2020<br>:<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM OF DECISION DENYING DEFENDANTS'
MOTION FOR RECONSIDERATION [DKT. 54]**

On October 15, 2018, Defendants U.S. Departments of Defense ("DoD") and Homeland Security moved for summary judgment on the issues remaining between the parties in this Freedom of Information Act ("FOIA") action. *See* [Dkt. 37 (Defs.' Mot. Summ. J.)]. On July 12, 2019, the Court granted in part and denied in part Defendants' Motion. *See* [Dkt. 52 (Order on Summ. J.)]. The Court held, *inter alia*, that Defendants had not shown that the "Recommendations" section of the Air Force Talking Paper was part of a deliberative process warranting redaction under FOIA Exemption 5 and that Defendants failed to justify redaction of all names of personnel at or below Rank O-6 under Exemption 6 because they did not establish that the records are "similar files." *Id.* at 26, 38. Before the Court is Defendants' motion for reconsideration of the two rulings. [Dkt. 54 (Def. Mot. for Recons.)].

Defendants' motion is groundless and fundamentally fails to comply with the standard governing motions for reconsideration. It is DENIED accordingly.

1

I. **Standard for Reconsideration**

In the Second Circuit, the well-established standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); see D. Conn. L. R. 7(c) (requiring the movant to file along with the motion for reconsideration "a memorandum setting forth concisely the controlling decisions or data the movant believes the Court overlooked").

There are three grounds for granting a motion for reconsideration: (1) "intervening change of controlling law"; (2) "the availability of new evidence"; or (3) a "need to correct a clear error or prevent manifest injustice*.*" *Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Fed. Practice & Procedure, § 4478 at 790). If the Court "overlooked controlling decisions or factual matters that were put before it on the underlying motion," reconsideration is appropriate. *Eisemann v. Greene*, 204 F.3d 393, 395 (2d Cir. 2000) (per curium). However, a motion for reconsideration should be denied when the movant "seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257; *Patterson v. Bannish*, No. 3:10-cv-1481 (AWT), 2011 WL 2518749, at *1 (D. Conn. June 23, 2011) (same). A motion for reconsideration is not an opportunity for the losing party to plug the gaps of a lost motion or to advance new arguments to supplant those that failed in prior briefing. *Nationwide Mut. Ins. Co. v. Bland*, No. 3:99CV2005 (RNC), 2006 WL 860138, at *1 (D. Conn. Mar. 31, 2006)

(quoting *Lopez v. Smiley*, 375 F. Supp. 2d 19, 22 (D. Conn. 2005)) Thus, to prevail the moving party must identify precisely what the parties presented in their original briefs which the court failed to consider or misconstrued or why the decision is otherwise manifestly unjust. Disagreement with the Court's decision, a desire for a second chance to convince the Court, or an attempt to supplant counsel's judgment for that of the Court will simply not suffice.

I. **Redaction of Personnel Names Pursuant to Exemption 6**

Defendants argue that reconsideration is required as to Exemption 6 because the Court did not consider the following controlling law or data [Dkt. 54 (Def. Mem. in Supp. Mot. Recons.) at 2]:

A. Caselaw analyzing 5 U.S.C. § 552(a)(2)(E), a FOIA provision cited by the Court, but briefed by neither party;

B. Plaintiff waived the argument that the challenged records were not "similar files" pursuant to Exemption 6;

C. Defendants were not on notice that the issue was contested and would have raised favorable potions of caselaw cited by the Court, specifically *Vietnam Veterans of Am. Conn. Greater Hartford Chapter 120 v. Dep't Homeland Sec.*, 8 F. Supp. 3d 188 (D.Conn. 2014); and

D. Defendants would have raised other law to address the "similar files" element.

None of these arguments are supported by citation to caselaw or data that is controlling but was overlooked by the Court nor does Defendant show manifest injustice.

### A. Applicability of 5 U.S.C. § 552(a)(2)(E)

Defendants argue that the Court's opinion cited 5 U.S.C. § 552(a)(2)(E) regarding protection of the Defendants' employees' privacy interests, but that FOIA provision is inapplicable and not briefed by the parties. [Dkt. 54 (Def. Mem. in Supp. Mot. Recons.) at 4-6]. The argument reflects a misreading of the Court's decision. The Court expressly stated § 552(a)(2)(E) does not provide the basis for its decision. The Court's brief discussion of § 552(a)(2)(E) follows the Court's analysis as to why Exemption 6 is inapplicable to the Defendants' assertion of a blanket redaction of names and is dictum. [Dkt. 52 (Order on Summ. J.) at 28-37]. The citation to § 552(a)(2)(E) simply notes that an exhaustive review of all possible bases for withholding the information ordered disclosed was not conducted by the parties or the Court.  The parenthetical reference to § 552(a)(2)(E) was preceded by a thorough discussion of why Defendant failed to show that withholding the information was permitted under Exemption 6. The cursory illustrative mention of § 552(a)(2)(E) is preceded by a qualifying statement that "…some other FOIA provision *may* permit the redaction of identifying details…," then followed by another qualifier that "[t]he Court *only goes so far as to conclude* that Defendants have failed to satisfy the threshold requirement with respect to their second and third categories of Exemption 6 redactions…"[*Id.* at 37-38] (emphasis added). [1]

Defendants argue that "[i]n focusing on § 552(a)(2)(E) as a possible basis for redacting the personal information of DoD employees, such as names and

---

[1] **Because the reference to § 552(a)(2)(E) is dictum and the Court specifically noted that it was not making a determination on the potential applicability of any other possible FOIA exemption, the Court will not consider it further.**

4

contact information, the defendants believe the exemption provided for by Congress in § 552(b)(6) was discounted." [Dkt. 54 (Def. Mem. in Supp. Mot. Recons.) at 6]. Defendants do not point to any portion of the Court's prior decision demonstrating that the Court "discounted" Exemption 6, whether based on the suggestion that other FOIA exceptions could still apply or otherwise. Defendants' speculation unsupported by language in the Court's decision utterly fails to satisfy their burden on reconsideration to establish controlling law of facts that were overlooked but "might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.

### B. Whether Plaintiff waived the argument that records were not "similar files"

Defendants curiously argue that they did not address whether the records at issue are "similar files" under Exemption 6 in their motion for summary judgment because Plaintiffs did not raise the issue in opposition to Defendants' motion for summary judgment. [Dkt. 54 (Def. Mem. in Supp. Mot. Recons.) at 6-7]. As an initial matter it bears noting that:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). Thus, Defendant bears the burden of establishing its entitlement to relief by showing there is no genuine issue of material fact as to any element of a claim on which it seek summary judgment.

In response, Plaintiffs argue that Defendants raised the "similar files"

5

issue in their opening memorandum in support of their motion for summary judgment. [Dkt. 56 (Pl. Resp. to Def. Mot. for Recons.) at 2](citing [Dkt.37 (Def. Mem. Supp. Defs' Mot. for Summ. J.) at 20-22, 29-32]). The Court agrees with Plaintiff. Once again, Defendants have misread the record.

As discussed at great length in the Court's July 12, 2019 decision, courts use a two-part test in determining whether Exemption 6 applies. [Dkt. 52 (Order on Summ. J.) at 28]. First, the Court must "determine whether the identifying information is contained in 'personnel and medical files and similar files'" and [then] (2) "balance the public need for the information against the individual's privacy interest in order to assess whether disclosure would constitute a clearly unwarranted invasion of personal privacy." *Ibid.* (citing *Associated Press v. U.S. Dep't of Def.*, 554 F.3d at 291 (2d Cir. 2009)). The crux of the threshold "similar file" issue is whether the "records at issue are likely to contain the type of personal information that would be in a medical or personnel file." *Id.* at 30 (citing *Wood v. F.B.I.*, 432 F.3d 78, 86 (2d. Cir. 2005)).

In their opening brief in support of their motion for summary judgment, Defendants argued that "[w]hile the redacted documents in this case are not personnel or medical files, they do contain information sufficient to bring them within the broad reading that courts have given to the "similar files" language in Exemption 6." [Dkt. 37 (Def. Mem. Supp. of Mot. Summ. J) at 21]. Defendants bore the burden of establishing that the redactions fall within an exemption to FOIA, including establishing the threshold issue of whether the redactions were "similar files." *Associated Press*, 554 F. 3d at 284.

**In deciding a case a court is not constrained by the parties legal and factual analysis. Defendants cite no authority for the proposition that a defendant who fails to address or adequately address an element of a claim on which it seeks summary judgment is entitled to notice and an opportunity to file additional briefing. On the contrary, Plaintiffs and Defendants agree that the Court could sua sponte raise the similar files issue. [Dkt. 54 (Def. Mem. in Supp. Mot. Recons) at 7]; [Dkt. 56 (Pl. Resp. to Def. Mot. Recons.) at 3]. Defendants prevailed on the issue of whether the STA's professional biographies were "similar files." [Dkt. 52 (Order on Summ. J.) at 31]. Having decided that threshold question with respect to the STA biographies in favor of Defendants, the Court proceeded onto the "[t]he more challenging question [of] whether the DOJ's blanket redaction of names of DOD employees at the rank of Colonel and below…is justified under Exemption 6." *Id.* at 32.**

**After examining Second Circuit case law in, *inter alia*, *Wood*, 432 F. 3d at 87 and *Cook*, 758 F. 3d at 175, the Court concluded that that records at issue were not "similar files" as they "include no information identifiable to any individual other than names and contact information." [*Id.* at 37]. Although Defendants bore the burden of establishing the applicability of the exemption, the Court noted that, "Defendants made no arguments as to why each of those documents qualifies as a "similar record" other than the fact that each contains identifying information of individual employees—e.g., names and email addresses." *Ibid.* (citing Dkt. 37 (Def. Mem. in Supp. Mot. Summ. J.) at 21).**

**On reconsideration, Defendants do not cite any authority for the**

proposition that waiver can be defensively asserted by the Government in the FOIA context where the Government has otherwise failed to establish all elements of the asserted exemption. In the FOIA context, waiver is generally asserted offensively by the party seeking disclosure to negate a claim of privilege held by the Government. *See e.g., Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 811 F. Supp. 2d 713, 743 (S.D.N.Y. 2011), *amended on reconsideration* (Aug. 8, 2011) (waiver of agency-held attorney client privilege).[2]

Moreover, assuming that waiver was available to the Government in FOIA cases to excuse the failure to satisfy an element of an exemption, Defendants themselves did not assert this defense in their motion for summary judgment. Thus, Defendants' waiver defense would itself be waived and they cannot seek to relitigate the matter by attempting to do so on reconsideration.

### C. Whether the Defendants were deprived of the opportunity to thoroughly explore favorable positions of case law cited.

Defendants argue that the Court's decision on the "similar files" threshold issue "deprives the defendants of the opportunity to respond to a critique of this element of their claim." [Dkt. 51 (Def. Mem. in Supp. Recons.) at 7)].

---

[2] The Court notes that the district court went on to consider the threshold "similar files" issue under Exemption 6. *See infra*. 9-10.

"It is not the case that any mention of a federal employee's name may be withheld. Such a blanket rule would fail both the threshold test—as to the type of file or record or information in which such information is found—and the balancing test of privacy versus public interests. More suspect yet is the blanket withholding of the names of the authors of files." *Nat'l Day Laborer Org. Network*, 811 F. Supp. 2d at 746.

**Defendants argue that they would have cited other favorable portions of caselaw cited by the Court, specifically, *Veterans of Am. Conn. Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*, 8 F. Supp. 3d 188, 231 (D. Conn. 2014) )[hereinafter "*VVA Chapter 120*"]. This argument is meritless too.**

**First and foremost, Defendants concede that "similar files" was an element as to which they bore the burden on summary judgment of showing there was no material issue of fact in order to obtain a judgment as a matter of law. They were unfettered as to the content of their opening brief. Thus, they had every opportunity to brief the issue in their memorandum of law in support of their motion for summary judgment. The fact that they did not brief the issue thoroughly or anticipate the way the Court analyzed the issue does not mean they did not have the opportunity to respond. In fact the only way a party could "respond" to a court's reasoning would be to relitigate the issue, which is impermissible.**

**In fact, Defendants did attempt to bear their burden of establishing that Exemption 6 applied in the blanket manner asserted. Both parties extensively briefed *VVA Chapter 120* as persuasive authority for different propositions of law and disagreed as to its holding regarding redactions of officer names at the O-6 level. *See* [Dkt. 37 (Def. Mem. Supp. of Summ. J.) at 22]; [Dkt. 40 (Pl. Opp'n. to Def. Mot. for Summ. J) *passim* regarding FOIA search efforts, discovery, and redactions]; [Dkt. 48 (Def. Resp. to Pl. Opp'n.) 12-13]; [Dkt. 50 (Pl. Sur-reply Br.) 8-9].**

**The Court cited *VVA Chapter 120* in footnote 14 to explain that "the redaction of names of low-level DOD officials in "separation packets," was**

9

appropriate because the documents were essentially personnel files. [Dkt. 52 (Order on Summ. J.) at 34]; *see also* VVA Chapter 120 at 229 ("It is undisputed that the files at issue here constitute "personnel and medical files and similar files" in which the individual service members have a significant privacy interest.")

The Court concluded that *VVA Chapter 120* is distinguishable from the instant action because, here, Defendants failed to show that the employee and Working Group member names and contact information were "personnel and medical files and similar files." [*Id*. at 38].

On reconsideration, Defendants argue that "[t]he Court's holding in *VVA Chapter 120* was not limited to separation packets, but rather approved DoD's redaction of employee names in every responsive document, including emails, memos, and Talking Papers—just as DoD has claimed here." [Dkt. 54 (Def. Mem. in Supp. Mot. Recons.) at 9]. Defendants supports this position with citation to the classes of documents sought in the amended complaint in *VVA Chapter 120*. [*Id*. at 9, n. 3.](citing *VVA Chapter 120*, No. 3:10-cv-1972 (AWT), Am. Compl. Ex. A. Doc. #22 at 2 n.1.). This information was available to Defendants, yet they did not make this distinction in the first instance. Because *VVA Chapter 120* is not controlling precedent, the Court declines to analyze it again.

> D. <u>Defendants would have raised other law to address the "similar files" element</u>.

Similarly, Defendants now cite *N.Y. Times v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990) for the premise that the threshold Exemption 6 inquiry does not turn on "the nature of the files," but rather whether the information merely "applies to an individual," which *a priori* includes any personally identifiable information. [Dkt.

54 (Def. Mem. in Supp. Mot. Recons.) at 10].

*N.Y. Times v. NASA*, 920 F.2d at 1006 concerned public disclosure of the voice recording of astronauts' final communications during the space shuttle *Challenger's* fated flight. The D.C. Circuit held that the recordings met the threshold showing that they "appli[ed] to particular individuals," based on voice inflictions which may reveal astronauts' highly personal thoughts and feelings in the moments before death. [*Id.* at 1006-1010.].

In the nearly thirty years that have passed since the D.C. Circuit decided the case, it has yet to be cited by the Second Circuit Court of Appeals. The Southern District of New York in *Nat'l Day Laborer Org. Network*, 811 F. Supp. 2d at 745, expressly declined to follow it, noting too that the holding has never been explicitly adopted by the Second Circuit. In particular, the district court criticized the outdated assumptions that the case was based upon:

> The court went even further in stating in a parenthetical, "[i]n fact, research reveals no case in which the Government has ever before even asserted the privacy interest of the author of a file." *NASA, 920 F.2d at 1009*. This comment shows how much has changed in twenty years, as the Government now regularly asserts a privacy interest over information about the authors of government files…

*Id.* at n. 138.

*N.Y. Times v. NASA* makes clear, however, that the function of the threshold inquiry is analysis of whether the file contains information concerning a "particular individual," which is not limited to the author of the file. *Id.* at 1007. The D.C. Circuit observed that "[n]ot every government file contains information about an individual. There are surely millions, perhaps billions, of government

11

documents that say nothing about any individual…Even when such a file does contain information apart from and beyond the content of the words used, it may not be possible to identify the individual *to whom that information applies*." *Id*. at 1006-07 (emphasis added).

Instead of the "author/subject fallacy" rejected by the D.C. Circuit, *Id*. at 1007-09, Defendants' argued-for application presents the inverse "subject/author" fallacy. The Court previously rejected this argument on the basis of *Cook*, 758 F.3d at 168 and *Wood*, 432 F.3d at 78. [Dkt. 52 (Order on Summ. J.) at 33-36].

*N.Y. Times v. NASA* is not controlling precedent in the Second Circuit and is distinguishable on several fronts, not the least of which is the highly personal nature of the material sought. As precedent that could have been raised by the Defendant in the first instance, the Court declines to consider it further on reconsideration as no manifest injustice would result.

II. <u>Applicability of Exemption 5 to the Talking Paper's Recommendation</u>

   a. <u>Attorney Sono's supplemental affidavit.</u>

FOIA Exemption 5 exempts from production records that are "inter agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *See* 5 U.S.C. § 552(b)(5). The Court's July 12, 2019 ruling determined that Exhibit 9-I, the Talking Paper documenting the Working Group's findings were pre-decisional but not deliberative, and, therefore, Exemption 5 does not apply.

On reconsideration, Defendants argue that the Court misconstrued the meaning of Colonel Jones's declaration, which stated "the recommendations,

conclusions, and findings of the working group have not been officially briefed to senior officials within the Air Force or to the Office of the Secretary of Defense, which develops policy for the entire Department of Defense." [Dkt. 54 (Def. Mem. Supp. Mot. Recons.) at 13](citing Dkt. 37 (Def. Mem. in Supp. Mot. Summ. J) at 39)(quoting Ex. 8, Jones Decl. 3-5 ¶ 19).

As the Defendants admit, "…the declarations submitted to Court in support of this argument were not a model of clarity..." [Dkt. 54 (Def. Mot. for Reconsideration) at 12].[3] Based on Colonel Jones's and Rita Sono's earlier declarations, the Court concluded that "Defendants represent that the Talking Paper was never presented to senior Air Force officials. So what concrete deliberative decision-making process the Working Group and its Talking Paper were a part of is somewhat a mystery." [Dkt. 52 (Order on Summ. J.) at 25]. Now, on reconsideration, Defendants submit a supplemental declaration from Rita Sono attesting that the recommendations "were provided to the Office of the Secretary of Defense ("OSD") for consideration of whether there should be changes in these policies or practices, however, it is difficult to determine whether OSD was officially briefed due to the passage of time and changes in personnel." [Dkt. 54-2 [Def. Mot. for Recons., Ex. 23, Sono Suppl. Aff.) at ¶ 7]. Defendants now argue that being "officially briefed" is a term of art referring to a formal process at the DoD, but do

---

[3] It is noteworthy that this not the only instance where Colonel Jones's declarations were unclear at best. [Dkt. 52 (Order on Summ. J.) at 14] ("The Court took considerable effort to piece together the information in the three declarations of Colonel Jones regarding the searches. Even doing so, the Court was unable to discern a clear structure of the drives, folders, and files that Defendants did and did not search.")

not define the term further. [Dkt. 54 (Def. Mem. Supp. Mot. Recons.)].

At summary judgment, Attorney Sono previously authored a declaration accompanied by a *Vaughn* index entry stating simply: "Report created by lower level Air Force official. Personnel did not brief the report to senior Air Force or Department of Defense leaders. Air Force did not adopt the recommendations." [Dkt. 48 (Def. Repl. Br., Ex. 22-1 *Vaughn* Index at 3]. The Court interpreted Colonel Jones's and Attorney Sono's declarations to mean what they plainly said. The *Vaughn* Index does not contain any reference to being "officially briefed," but rather that it was not "briefed," which suggests a lack of formal or informal consideration in the decision-making process. [Dkt. 48 (Def. Repl. Br., Ex. 22-1 *Vaughn* Index at 30]

Even on reconsideration, Attorney Sono's supplemental declaration posits no supporting details explaining when, to whom, and under what circumstances the report was provided to OSD. It is astounding that the Defendants still do not know whether OSD was "officially briefed," even though they describe it generally as a formal process, so presumably there would be a memorialization of the event. [Dkt. 54 (Def. Mem. Supp. Mot. Recons.) at 14, n.4].

Defendants do not explain why this evidence could not have been submitted earlier but rather rely on the fact that Colonel Jones's original declaration was "not a model of clarity." *Id*. at 12. It is Defendants' responsibility to be clear and to accept the consequences of its failure to meet its burden by doing so. Defendant cites no law to support the position that the court should reconsider this matter because the original factual support was lacking.

The information presented in Attorney Sono's supplemental affidavit was either known to the Defendants earlier or should have been discovered through the exercise of reasonable diligence. This is not "newly discovered evidence." It constitutes an attempt to relitigate or plug gaps in the original argument.

Even were the Court to reconsider, it fails. It simply raises more questions and reconsideration based on it would not be manifestly unjust as it would not alter the Court's decision.

b. **Whether the Court considered the content and purpose of the Talking Paper.**

Defendants also argue that the "process that led to the formation of the working group and drafting of the Talking Paper Recommendations indicates the deliberate nature of the working group and record." [Dkt. 54 (Def. Mem. Supp. Mot. Recons.) at 16].

The issue remains Defendants failure to provide the Court with sufficient information to determine whether the withheld information in the Talking Paper was part of any real governmental decision making process in the first instance.

Attorney Sono's supplemental declaration presents no new information that was not available to the Defendants. *See Virgin Atl. Airways*, 956 F.2d at 1255 (noting that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again") (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)). The Court is unpersuaded its decision would have been different had the waters been further muddies by this new evidence.

    c. <u>Request for in camera review</u>

The Court DENIES Defendants' request for *in camera* review as moot. As set forth in the Court's July 12, 2019 ruling, Exemption 5 does not apply to the redacted portions of the Talking Paper (Ex. 9-I).

## Conclusion

Defendants' Motion for Reconsideration is DENIED. The U.S. Attorney's Office is reminded that **a motion for reconsideration is an extraordinary remedy, and this Court will not reconsider a motion already examined simply because a party is dissatisfied with the strength of its submission and the resultant outcome of his motion. To do otherwise is antithetical to the interests of finality and judicial economy and the first principles of civil procedure, embodied in Federal Rule of Civil Procedure 1 and would be a waste of judicial resources.** *Stoner v. Young Concert Artists, Inc.*, No. 11 CIV. 7279 LAP, 2013 WL 2425137, at *1 (S.D.N.Y. May 20, 2013) (citations omitted).

No further delay in the production of documents is warranted and the remaining documents are sufficiently limited as to warrant immediate production. Defendants shall produce all documents that were subject to the motion for reconsideration within 96 hours under penalty of sanctions.

                            IT IS SO ORDERED

                                  /s/
                            Hon. Vanessa L. Bryant
                            United States District Judge

Dated at Hartford, Connecticut: February 28, 2020